UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| BOBBY G. RICKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:14-CV-256-TWP-CCS |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings

and Memorandum in Support [Docs. 22 & 23] and Defendant's Motion for Summary Judgment

and Memorandum in Support [Docs. 24 & 25].  Bobby G. Ricker ("the Plaintiff") seeks judicial

review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the

Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On September 18, 2012, the Plaintiff filed an application for disability insurance benefits

("DIB"), claiming a period of disability which began December 1, 2010.  [Tr. 160].  After his

application was denied initially and upon reconsideration, the Plaintiff requested a hearing.

[126-27].  On November 5, 2013, a hearing was held before an ALJ to review determination of

Plaintiff's claim. [Tr. 84-101].  On January 30, 2014, the ALJ found that the Plaintiff was not

disabled.  [Tr. 65-74].  The Appeals Council denied the Plaintiff's request for review [Tr.1-4];

thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this Court on February 18, 2015, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.    ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 1, 2010 through his date last insured of December 31, 2010 (20 CFR 404.1527 *et. seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: ischemic heart disease, obesity, and low back pain (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional climbing ramps, stairs, ladders, ropes, and scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; and no concentrated exposure to vibration.
>
> 6. Through the date last insured (December 31, 2010), the claimant was capable of performing past relevant work as an electromechanical technician. This work did not require the

performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 1, 2010, the alleged onset date, through December 31, 2010, the date last insured (20 CFR 404.1520(f)).

[Tr. 70-74].

## II.      DISABILITY ELIGIBILITY

This case involves an application for DIB. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); see 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.

3

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and

4

must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v.

5

Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    POSITIONS OF THE PARTIES

On appeal, the Plaintiff asserts three allegations of error committed by the ALJ. First, the Plaintiff argues that substantial evidence does not support the ALJ's finding that the Plaintiff can perform his past relevant work as an electromechanical technician because the record contains insufficient information about the job requirements. [Doc. 23 at 8-11]. Second, the Plaintiff contends that the vocational expert's ("VE") testimony regarding the Plaintiff's job as an electromechanical technician conflicted with the Dictionary of Occupational Titles ("DOT") and no explanation was provided to resolve the conflict. [Id. at 11-13]. Finally, the Plaintiff maintains that the ALJ erred by failing to call a medical advisor at the hearing to opine on how long the Plaintiff's back impairment had been disabling. [Id. at 13-14].

The Commissioner responds that the ALJ's finding that the Plaintiff could perform his past relevant work is supported by the Plaintiff's statements and work history, medical records, and VE testimony. [Doc. 25 at 10-12]. Moreover, the Commissioner argues that because the VE explained that her testimony was consistent with the DOT, the ALJ had no duty to inquire any further about possible conflicts between the VE's testimony and the DOT. [Id. at 13]. Lastly, the Commissioner contends that the record and the Plaintiff's testimony provided a sufficient basis for the ALJ to evaluate the Plaintiff's level of impairment, and therefore, a medical advisor was neither necessary nor required by agency rules and regulations. [Id. at 8-10].

## V.    ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

Case 2:14-cv-00256-TWP-CCS   Document 28   Filed 12/31/15   Page 6 of 17   PageID #: 458

## A.      Past Relevant Work

The Plaintiff relies on Social Security Ruling ("SSR") 82-62 to argue that the ALJ's decision does not fully explain how the Plaintiff can perform his past relevant work as an electromechanical technician because the decision fails to describe what the Plaintiff's actual duties were or his exertional capabilities at the time he performed his job. [Doc. 23 at 8-9].

The record contains a Work History Report completed by the Plaintiff, explaining that he worked full-time as an electromechanical technician between 1997 and 2006 and that his job responsibilities included, turning plant lights on, riding a buggy between machines that needed repair, and performing preventive maintenance on the machines. [Tr. 190-91]. In addition, the Plaintiff explained that he lifted a 10 pound tool pouch and small motors once in a while, but answered, "Don't Know" in response to how often he had to walk, stand, or sit and perform postural activities such as climbing, stooping, kneeling, crouching, and crawling, and was also unsure how often he had to handle or grasp objects. [Tr. 191].

During the administrative hearing, the Plaintiff testified that his back started hurting in 2006, which caused him to work on his farm instead of a traditional job. [Tr. 90]. The Plaintiff explained, however, that he quit his electromechanical technician job in 2006 because the company he worked for relocated overseas. [Tr. 92]. Had the company not relocated, the Plaintiff stated he could have continued performing his job in 2010 "if I hadn't steeped in that hole," referring to a fall he took in 2012 while working on his farm. [Tr. 92, 265]. He further testified about his functional abilities in December 2010. [Tr. 94-96]. Specifically, the Plaintiff stated he could walk two to three miles but depending on what he was doing before he started walking, he may need a break after walking for 20-30 minutes. [Tr. 94-95]. In regard to sitting, the Plaintiff stated he had no problem sitting [Tr. 94] but indicated he would need to change

7

position after a while, which his electromechanical technician job allowed, and that he did not have to change position as much in 2010 compared to now. [Tr. 94-96]. In addition, the Plaintiff testified he could lift up to 50 pounds but only for a "little while." [Tr. 94]. At the end of the Plaintiff's hearing testimony, the ALJ asked the Plaintiff if he would be able to perform light work in 2010 and defined light work as work involving standing and walking for up to six hours in an eight-hour workday with normal breaks and lifting 10 pounds frequently and 20 occasionally. [Tr. 99]. The Plaintiff responded, "Yeah, I worked eight and ten hours back in 2010." [Id.].

The VE then testified that the Plaintiff's job as an electromechanical technician was a light and skilled job. [Tr. 99]. The VE was asked whether a hypothetical individual, the same age, education, and past relevant work experience as the Plaintiff, was capable of performing past relevant work if the individual was limited to light work and was further restricted to only occasional postural activities and no concentrated exposure to vibrations. [Tr. 100]. The VE responded that the individual would be able to perform the electromechanical technician job. [Id.]. The VE also affirmed that her testimony was consistent with the DOT. [Id.].

In the disability determination, the ALJ relied on the Plaintiff's Work History Report, earnings record, and VE testimony in concluding that the Plaintiff was capable of performing past relevant work as an electromechanical technician. [Tr. 74]. The ALJ explained,

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as actually and generally performed. The vocational expert testified that, based on the claimant's vocational factors and residual functional capacity, the claimant could perform his past relevant work as an electromechanical technician.

[Id.].

8

While the Plaintiff acknowledges that he described his job duties in the Work History Report and that the job required that he carry 10 pounds, the Plaintiff argues that this limited information fails to describe how much walking, standing, or sitting he performed in an eight-hour workday, how often he had to perform postural activities, how often he had to manipulate his hands and fingers, or the technical knowledge or skills the job entailed. [Doc. at 9-10]. According to SSR 82-62, the Plaintiff argues that the ALJ should have done more to evaluate the physical and mental demands of the Plaintiff's past work. [Id. at 11].

The Commissioner points out that SSR 82-62 outlines three factors that the ALJ must take into consideration when determining whether a claimant can perform his past relevant work, and that the Plaintiff's hearing testimony, the lack of medical evidence demonstrating a disabling impairment in 2010, and the VE's testimony all support the ALJ's finding that the Plaintiff could perform the duties of an electromechanical technician. [Doc. 25 at 11-12].

"A claimant bears the burden of proving she cannot perform her past relevant work either as she performed the job or as the job is generally performed in the national economy." Ellis v. Astrue, No. 3:11-CV-535, 2012 WL 5304203, at *5 (E.D. Tenn. Oct. 4, 2012) (internal citations omitted) (citing Studaway v. Sec'y of Health and Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987)). However, "the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job[.]" D'Angelo v. Comm'r of Soc. Sec., 475 F. Supp. 2d 716, 723 (W.D. Mich. 2007); see also 20 C.F.R. § 404.1520(f) (explaining that "we will compare our residual functional capacity assessment . . . with the physical and mental demands of your past relevant work."). Once an ALJ finds that a claimant can perform past relevant work, a finding of "not disabled" is appropriate. Soc. Sec. Rul. 82-62, 1982 WL 31386, *3 (1982).

An ALJ may obtain evidence about the requirements of a claimant's past relevant work

9

from many sources. While an ALJ "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles'" for the information he needs to obtain evidence to help him determine if the claimant is capable of performing past relevant work in accordance with the claimant's RFC, 20 C.F.R. § 404.1560(b)(2), "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." Soc. Sec. Rul. 82-62, 1982 WL 31386 at *3. SSR 82-62 cautions, however, that "[p]ast work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work." Id. Specifically, the claimant's ability to perform past relevant work requires careful consideration of (1) the claimant's statements regarding which work requirements he no longer can perform and why; (2) medical documentation establishing an impairment's limiting effect on the claimant's ability to perform the work; and (3) in some cases, supplemental sources, such as an employer or the DOT, who can provide additional information of the work's requirements as generally performed. Id.

With these three factors in mind, the Court finds that substantial evidence supports the ALJ's finding that the Plaintiff is capable of performing his past work as an electromechanical technician. As to the first factor outlined in the Ruling, the Plaintiff's Work History Report and testimony establishes that he could have performed his job on and prior to December 31, 2010, the Plaintiff's last date insured. The Plaintiff explained in his Work History Report that he lifted around 10 pounds but testified that in 2010, he was capable of lifting up to 50 pounds at least some of the time and could generally walk two to three miles and sit without problems. These statements demonstrate that the Plaintiff could perform his job within the restrictions imposed by

10

the ALJ as well as the DOT's description of electromechanical technician which defines the job as light work.[1]  Dictionary of Occupation Titles, § 710.281-018, 1991 WL 679163 (4th Ed. 1991).  Moreover, while the Plaintiff argues that further inquiry about the demands of his job should have been made because it is unclear how often the Plaintiff had to walk, stand, or sit, as well as perform postural activities, SSR 82-62 only instructs that "[d]etailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate."  1982 WL 31386 at *3.  Because the Plaintiff, who is the primary source concerning the skills and exertional demands of his job, provided positive testimony that he could have continued working his job as an electromechanical technician in 2010, no further inquiry by the ALJ was necessary.

As to the second factor, the Court has not found, and the Plaintiff has not shown, any medical evidence establishing how the Plaintiff's impairments limited his ability to perform his past relevant work in 2010.  The record only contains four treatments notes from the relevant time period, which largely document complaints of chest pain.  [Tr. 236-46].  These treatment notes are void of any complaints of or treatment for back pain.  They further fail to demonstrate that the Plaintiff had any sort of work-related limitations due to the Plaintiff's back pain.  The record is clear that the Plaintiff did not receive any treatment for his back until May 2012 when he established care with Craig Schmalzried, M.D.  [Tr. 300-02].  On November 2, 2012, Dr. Schmalzried completed a "Primary Physician's Statement," wherein he responded to a number of multiple-choice and short answer questions regarding the Plaintiff's back impairment and its limiting effects.  [Tr. 278-82].  The opinion limits the Plaintiff to less than a full range of

---

[1] "Light Work," according to the DOT's description for electromechanical technician, includes exerting up to 20 pounds occasionally, 10 pounds frequently, and a negligible amount constantly, as well as walking or standing a significant degree or sitting most of the time and/or working at a production rate pace that entails pushing and/or pulling materials that are at least negligible weight.

sedentary work. [Id.]. Notably, Dr. Schmalzried opined that the Plaintiff's back impairment has lasted since December 31, 2010. [Doc. 279]. While this would make Dr. Schmalzried's opinion arguably relevant despite the Plaintiff having waited until 2012 to receive treatment for his back, Dr. Schmalzried does not provide any explanation or support for opining that the Plaintiff's back condition in 2012 extended back to 2010, the relevant time period in question. Reviewing Dr. Schmalzried's treatment records, it appears to the Court that his opinion was based upon the Plaintiff's self-report that he had experienced back pain for two years, rather than objective medical evidence. [Tr. 300]. Therefore, the Court cannot say that the ALJ erred as a matter of law when he assigned little weight to Dr. Schmalzried's opinion, finding that the opinion did not relate back to the relevant time period. [Tr. 73].

Finally, with regard to the third factor, the ALJ relied on VE testimony to determine that the Plaintiff is capable of performing the job of electromechanical technician. While the Plaintiff argues that the VE's testimony conflicts with the DOT, which the Court will address in more detail below, the Court finds that the hypothetical question posed to the VE accurately reflected the Plaintiff's functional limitations, and therefore, provided substantial evidence that the Plaintiff could perform his past relevant work. See Smith v. Halter, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

Accordingly, the Court finds that the ALJ sufficiently developed the record "to support a reasoned determination as to the demands of [the Plaintiff's] past relevant work and [the Plaintiff's] ability to meet those demands." Johnson v. Astrue, No. 3:08-CV-222, 2009 WL 2168671, at *11 (E.D. Tenn. July 17, 2009). Therefore, the Plaintiff's allegation of error is not

12

well-taken.

## B.    Conflict with the DOT

The Plaintiff also argues that the VE's testimony does not provide substantial evidence that the Plaintiff can perform his past relevant work because the Plaintiff's job description of an electromechanical technician differs from the DOT's job description.   [Doc. 23 at 10-12]. Although the VE confirmed that her testimony was consistent with the DOT, the Plaintiff argues that comparing the Plaintiff's limited job description with the DOT's description demonstrate that a conflict does exist and the ALJ failed to elicit any testimony from the VE to resolve the conflict in accordance with SSR 00-4p.  [Id. at 12].

The Commissioner responds that the Plaintiff's argument is unavailing because under Sixth Circuit caselaw and the Ruling, the ALJ satisfied his duty by asking the VE whether her testimony was consistent with the DOT, and because no conflict was identified, the ALJ was under no obligation to investigate further.  [Doc. 25 at 13].

SSR 00-4p explains that in making disability determinations, the agency relies "primar[ily] on the DOT . . . for information about the requirements of work in the national economy."  2000 WL 1898704 at *2 (2004).  However, "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings," and therefore, VE testimony "may be able to provide more specific information about jobs or occupations than the DOT."  Id. at *3.  As a result, a VE is permitted to rely on sources other than the DOT in evaluating a hypothetical question posed by an ALJ.  See 20 C.F.R. § 404.1566(d).

Here, the VE did not testify that she relied on any specific section of the DOT, nor was she obligated to, when she responded that the hypothetical individual could perform past relevant

13

work as an electromechanical technician. [Tr. 100]. Moreover, while the ALJ had an affirmative duty to ask about any possible conflicts between the VE's testimony and information provided in the DOT, Soc. Sec. Rul. 00-4p, 2000 WL 1898704 at *4, the Court finds that the ALJ fulfilled his duty when he asked the VE whether her testimony conflicted with the DOT. [Tr. 100]. Because the VE responded that it did not [id.], the ALJ had no continuing obligation to ensure whether the VE was correct before relying on her testimony. See Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374 (6th Cir. 2006) ("Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct."); Frommel v. Comm'r of Soc. Sec., No. 1:14-CV-522, 2015 WL 3970147, at *5 (S.D. Ohio June 10, 2015) adopted by No. 1:14CV522, 2015 WL 3970154 (S.D. Ohio June 30, 2015) ("[O]nly if the VE testifies that there is a conflict must the ALJ seek out 'a reasonable explanation for [the] apparent conflict.'") (quoting Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 603-605 (6th Cir. 2009)). Furthermore, Plaintiff's representative[2] had the opportunity to question the VE about any conflicts or the Plaintiff's ability to perform his past relevant work and elected to forego any questioning of the VE. [Tr. 100].

Lastly, the Court observes that it is immaterial that the Plaintiff's job description does not line up perfectly with the DOT's description. As explained by our appellate court, it is not uncommon for the DOT's description of a particular job to differ as it is actually performed by a claimant or as performed within a particular setting:

> The *Dictionary of Occupational Titles* itself contains a disclaimer, moreover, noting that it provides only "composite descriptions of occupations as they may typically occur." The descriptions listed in the dictionary "may not coincide with a specific job as actually

---

[2] Although the Plaintiff retained counsel at the administrative level [Tr. 119], it appears from the record that a paralegal from the law firm actually represented the Plaintiff at the hearing as well as most of the administrative proceedings. [Tr. 44-45, 84, 159, 307].

performed in a particular establishment or any given industry." The dictionary is based only on a selective sampling of 75,000 job sites out of the many millions of work places in the United States. Thus, the dictionary says, "[a]n occupation found to have certain characteristics in job situations observed by the employment service does not necessarily preclude the same occupation from having different characteristics in other job situations." It would be manifestly inappropriate to make the *Dictionary of Occupational Titles* the sole source of evidence concerning gainful employment.

Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994).

Accordingly, the Court is unpersuaded by the Plaintiff's allegation of error in this regard.

### C.     Medical Advisor

Finally, the Plaintiff relies on SSR 83-20 in asserting that the ALJ should have secured a medical advisor at the hearing to give an opinion as to how long the Plaintiff's back pain has been disabling. [Doc. 23 at 13-14]. The Plaintiff points to a statement [Tr. 47] submitted by his wife on October 25, 2012, which explains that the Plaintiff had difficulty performing his farm work in 2009, as well as other functional activities, and Dr. Schmalzried's opinion, which assessed the Plaintiff's functional restrictions due to his back impairment [Tr. 278-82]. [Id. at 13]. The Plaintiff submits that because this evidence corroborates his allegation regarding his back pain, a medical advisor was essential so that testimony could have been elicited as to how long the Plaintiff's impairment has been disabling. [Id. at 14].

The Commissioner argues that SSR 83-20, which deals with the onset of disability, is not applicable here because the Ruling only applies in cases where a finding of disability has been made. [Doc. 25 at 8]. The Commissioner states that not only is there no disability finding here, but the Plaintiff's testimony regarding his functional capabilities during the relevant time period are inconsistent with a disabling impairment. [Id. at 8-09]. The Commissioner further contends

15

that the medical records, which indicate that the Plaintiff did not seek treatment for back pain until May 2012, further discredit the Plaintiff's allegation. [Id.].

SSR 83-20 deals with establishing the onset date of disability. 1983 WL 31249, *1 (1983). In relevant part, the Ruling states the following:

> How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

Id. at *3.

As an initial matter, the Court finds that the record provides a sufficient basis for determining the Plaintiff's onset date of December 1, 2010. The Plaintiff has alleged this date, and the ALJ found the date was consistent with the record and the Plaintiff's allegation. [Tr. 70]. Thus, the Court finds that the Plaintiff's onset date is not in dispute such that an inference need be made. Moreover, the Plaintiff does not rely on the Ruling for the purpose of establishing an onset date, but rather for determining how severe his impairment was in 2010, particularly in light of his wife's statement and Dr. Schmalzried's opinion, which is not the purpose of SSR 83-20. Finally, as pointed out by the Commissioner, the Ruling "applies only when there has been a finding of disability and it is necessary to determine when the disability began." Clendening v. Comm'r of Soc. Sec., 482 F. App'x 93, 95 (6th Cir. 2012) (quoting Key v. Callahan, 109 F.3d 270, 274 (6th Cir.1997)); see Soc. Sec. Rul. 83-20, 1983 WL 31249 at *1, ("*In addition to determining that an individual is disabled*, the decisionmaker must also establish the onset date of disability.") (emphasis added). Because there has been no finding of disability in this case,

16

SSR 83-20 is inapplicable and a medical advisor for hearing purposes was neither required nor necessary.

Therefore, the Court finds the Plaintiff's allegation of error is meritless.

## VI.    CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[3] that the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 22**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 24**] be **GRANTED**.

Respectfully submitted,

     s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).